UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| PAUL J. S.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:24-cv-00131-TWP-KMB |
| | ) |
| FRANK BISIGNANO,[2] Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

### ENTRY ON JUDICIAL REVIEW

Plaintiff Paul J. S. ("Paul") appeals the Administrative Law Judge's decision denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. For the reasons set forth below, the Court **remands** the decision of the Commissioner.

### I.     PROCEDURAL BACKGROUND

On June 24, 2022, Paul filed applications for DIB and SSI, alleging a disability onset date of August 1, 2016 (Filing No. 7-5 at 4–17). His applications were initially denied on January 17, 2023 (Filing No. 7-4 at 12–21), and upon reconsideration on April 19, 2023, *id.* at 24–31. Administrative Law Judge Steven Collins (the "ALJ") conducted a telephonic hearing on

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

[2] Frank Bisignano became the Acting Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted for Leland Dudek as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

November 28, 2023, at which Paul, represented by a non-attorney representative, and a vocational expert appeared and testified. *Id.* at 39–75.

The ALJ considered Paul's alleged onset date of August 1, 2016, to be an implied request to reopen prior applications for DIB and SSI that Paul filed in 2021, which alleged the same onset date[3] (Filing No. 7-2 at 11). The ALJ found no basis for reopening the prior applications, so the period under consideration by the ALJ began December 1, 2021. *Id.* On April 1, 2024, the ALJ issued his decision denying Paul's applications, having determined that he was not disabled from any time between August 1, 2016, through April 1, 2024. *Id.* at 11–25. Paul sought review of the ALJ's decision by the Appeals Council. On July 24, 2024, the Appeals Council denied Paul's request to review the ALJ's April 1, 2024 decision, making it the final decision of the Commissioner for purposes of judicial review.

On September 25, 2024, Paul filed this action for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). On January 17, 2025, Paul filed a brief in support of the request for review (Filing No. 9). On March 12, 2025, the Commissioner filed a memorandum in support of the Commissioner's decision (Filing No. 11). On April 9, 2025, Paul filed a reply brief in support of the request for judicial review (Filing No. 12).

## II.     STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 587 U.S. 97, 98 (2019). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

---

[3] Paul had filed prior applications for DIB and SSI on January 19, 2021, alleging a disability onset date of August 1, 2016 (Filing No. 7-3 at 5). These prior applications were initially denied on March 23, 2021, and upon reconsideration on June 4, 2021. *Id.* Administrative Law Judge John R. Price conducted a hearing on November 16, 2021, and on November 30, 2021, issued a decision denying the prior applications. *Id.* at 5–18.

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. § 404.1520(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that also meets the durational requirement, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then his residual functional capacity will be assessed and used for the fourth and fifth steps. *See* 20 C.F.R. § 404.1520(a)(4)(iv)–(v). Residual functional capacity ("RFC") is "the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1)(3); Social Security Ruling 96-8p (S.S.A. July 2, 1996), 1996 WL 374184). At step four, if the claimant can perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). At the fifth and

3

final step, it must be determined whether the claimant can perform any other work, given his RFC and considering his age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if he can perform any other work in the relevant economy. *Id.*

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. For the purpose of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 587 U.S. at 103). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ does not apply the correct legal standard, a remand for further proceedings is usually the

4

appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

### III.   FACTUAL BACKGROUND

Paul was 49 years old as of his instant DIB and SSI application date (Filing No. 7-2 at 17). He alleged disability beginning August 1, 2016, due to degenerative disc disease, obesity, Fuch's dystrophy, depression, anxiety, post-traumatic stress disorder ("PTSD"), and psychosis. *Id.* He had worked as a census clerk, hand packager, warehouse worker, assembler filter, card dealer, and sewer inspector. *Id.* at 24. The relevant evidence of record is amply set forth in the parties' briefs as well as the ALJ's decision and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

The ALJ first determined that Paul had not engaged in substantial gainful activity since the start of the alleged disability period under consideration of December 1, 2021. *Id.* at 14. At step two, the ALJ found that Paul had the following severe impairments during the relevant time period: degenerative disc disease, obesity, Fuch's dystrophy, bilateral knee osteoarthritis, depressive disorder, anxiety disorder, PTSD, and psychosis. *Id.* At step three, the ALJ found that Paul's impairments did not meet or medically equal a listed impairment during the relevant time period. *Id.* at 14–16. The ALJ then found that, during the relevant time period, Paul had the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except with lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking 6 hours in an 8-hour workday; sitting 6 hours in an 8-hour workday; climbing ramps/stairs occasionally, never climbing ladders, ropes, or scaffolds, and occasionally balancing, stooping, kneeling, crouching, and crawling; no unusually bright or strobe type lighting; no job tasks requiring fine near vision (such as threading a needle or reading fine print of 10 font or smaller); avoid concentrated exposure to extreme cold, humidity, wetness, and pulmonary irritants (fumes, odors, dusts, gases, poor ventilation, etc.); avoid all exposure to dangerous machinery, unprotected heights, and commercial driving; can understand, remember and carry out simple, routine tasks with simple work-related decisions

and few, if any workplace changes; no fast paced production requirements; can attend and concentrate for 2-hour segments over an 8-hour workday; occasional contact with supervisors and coworkers; and no public contact.

*Id.* at 16–17.

At step four, the ALJ found that Paul was not able to perform his past relevant work during the relevant time period. *Id.* at 23–24. At step five, the ALJ, relying on testimony from a vocational expert ("VE"), determined that Paul was able to perform jobs that exist in significant numbers in the national economy. *Id.* at 24–25. Accordingly, the ALJ concluded Paul was not disabled between August 1, 2016, and April 1, 2024. *Id.* at 34.

## IV. DISCUSSION

In his request for judicial review, Paul asserts only one basis of error: the ALJ failed to adequately account for the opinions of State agency psychologist Stacia L. Hill, Ph.D. ("Dr. Hill") in the RFC or hypothetical questions to the VE because, despite finding Dr. Hill's opinions to be mostly persuasive, the ALJ failed to include one of Dr. Hill's limitation in the RFC or explain why the limitation was omitted ([Filing No. 9 at 7](#)–10).

Paul argues that Dr. Hill opined that he was limited to no more than superficial interaction with supervisors and co-workers, and that the ALJ did not reject that opinion but also did not account for it in the RFC or the hypothetical questions to the VE. *Id.* According to Paul, in limiting him to only "occasional" interactions with supervisors and co-workers, the ALJ limited only the quantity of Paul's interactions, not the quality. *Id.* at 8–9. Paul acknowledges that the ALJ was not required to adopt Dr. Hill's opinions but asserts that the ALJ failed to adequately explain whether, or why, he departed from Dr. Hill's opinion that Paul should be limited to superficial interactions. *Id.* at 9. Because a flawed RFC determination was the basis for the questioning of the VE, Paul contends that the ALJ's decision must be reversed for further proceedings. *Id.* at 9–10.

The Commissioner responds that, contrary to Paul's assertion, the ALJ carefully evaluated all available medical opinions, determined that Dr. Hill's opinions related to Paul's *minimum* abilities, and reasonably concluded that no limitation to superficial interactions was warranted in the RFC or hypothetical questioning to the VE (Filing No. 11 at 5–9). Specifically, the Commissioner argues that "Dr. Hill's explanatory paragraph appears to express the minimal level of work activity Plaintiff could be expected to perform – not the most," and that nothing in Dr. Hill's opinion states that Paul should be restricted to no more than superficial interactions. *Id.* at 6–7. The Commissioner continues that Paul's reading of Dr. Hill's opinion is "incongruent" with her opinion that Paul "had no more than a mild limitation in his ability to interact with others." *Id.* at 7. The Commissioner also argues that Paul's medical records do not provide a reasonable basis for imposing a qualitative restriction on his social interactions. *Id.* The Commissioner notes that Dr. Hill cited, with approval, the opinion of consultative psychologist Gary Maryman, Psy.D. ("Dr. Maryman"), who opined that Paul "'should be able to interact appropriately with fellow coworkers and supervisors.'" *Id.* (quoting Filing No. 7-3 at 37). The Commissioner asserts that Dr. Maryman's opinion is inconsistent with a finding that Paul must be limited to only superficial interactions with supervisors and co-workers, so the ALJ committed no error by omitting a limitation to superficial interactions. The Commissioner lastly argues that any error by the ALJ is harmless, since Paul fails to show that any additional RFC limitation is supported by the record. *Id.* at 8.

In reply, Paul argues that the Commissioner's assumptions about Dr. Hill's opinion, as well as the Commissioner's reading of Dr. Maryman's opinion, is simply a *post hoc* rationalization for the ALJ's RFC determination (Filing No. 12 at 2–4). Paul reiterates that the ALJ was obligated to, but failed to, adequately explain why he found Dr. Hill's opinion to be "mostly persuasive" but declined to include a limitation regarding superficial interactions in the RFC. *Id.* at 2–3.

7

Dr. Hill opined that:

The evidence suggests that claimant can understand, remember, and carry out detailed, but not complex tasks. The claimant can relate on a superficial and ongoing basis with co-workers and supervisors. The claimant can attend to tasks for a sufficient period to complete tasks. The claimant can manage the stresses involved with detailed work-related tasks.

(Filing No. 7-3 at 40).

Dr. Maryman opined that:

[Paul] certainly gave the impression of being a gentleman who does have the intellectual ability necessary for him to understand, retain, and to carry out simple to more complex instruction and task. It was also believed that he would have the ability to carry out a work assignment adequately across the routine work schedule. He should be able to interact appropriately with follow workers and supervisors and he did not appear necessarily unable to deal with the general public as well. It was felt that this gentleman would seem able to adjust and adapt to stressors and pressures of a fairly routine work atmosphere.

*Id.* at 37; (Filing No. 7-10 at 34).

In evaluating these opinions, the ALJ stated:

Given the claimant's history of depression, anxiety, PTSD, and psychosis requiring regular outpatient mental health treatment and his disturbance of mood and/or affect, the undersigned finds the claimant . . . should have only occasional contact with supervisors and coworkers and no public contact.

\* \* \*

[Dr. Hill's] findings are mostly persuasive, as they are supported by detailed explanation and evidence reviewed, including the consultative psychological evaluation at Ex. C10F showing the claimant was fully oriented, did not seem to be in any emotional distress, had pretty well-developed social skills, and had intact memory and normal concentration. Outpatient mental health treatment notes also show diagnosis and treatment of major depressive disorder with mental status examinations showing disturbance of mood (depressed and anxious) and affect (blunted) at times but otherwise unremarkable findings, with good attention during the interviews, cooperative behavior, and appropriate thought process and content (Ex. C4F/28; C5F/64). Subsequent evidence obtained at the reconsideration and hearing levels is also consistent with these findings, showing continued treatment for his depression and PTSD with prescribed medications, with examinations showing disturbance of mood and affect at times but otherwise unremarkable findings (Ex. C13F/136, 141, 145, 149, 153, 162, 174; C17F/30, 34, 38). The

> undersigned has, however, found moderate limitations in interacting with others, given the claimant's depressed mood and blunted affect.
>
> \* \* \*
>
> [Dr. Maryman's] opinion is generally persuasive, as it is supported by unremarkable mental status examination findings, including fairly unremarkable mood, intact memory, normal attention and concentration, and appropriate behavior (friendly, polite, and related well). However, other evidence in the record is inconsistent and does support greater limitations, particularly outpatient mental health treatment notes at Ex. C4F, C5F, C13F, and C17F showing the claimant received outpatient mental health treatment on a regular basis with a psychiatrist and therapist, he had some disturbance of mood and/or affect at times, and he was prescribed psychotropic medications, including Trazodone and Cymbalta as well as monthly Abilify injections for maintenance (Ex. C17F/35). Accordingly, a reduction to unskilled work with some social limitations is appropriate.

(Filing No. 7-2 at 19, 21–22).

The parties dispute whether Dr. Hill's opinions relate to Paul's minimum or maximum ability to interact with supervisors and co-workers, and whether the record contains adequate evidence to support a limitation to superficial interactions. Unfortunately, the ALJ's above discussion resolves neither dispute.

The ALJ's decision does not explain how he interpreted Dr. Hill's opinion that Paul "can relate on a superficial and ongoing basis with co-workers and supervisors." (Filing No. 7-3 at 40). The Commissioner's argument that Dr. Hill's opinion "appears" to refer to Paul's minimum ability, rather that his maximum ability, is based solely on the Commissioner's own reading of Dr. Hill's opinion, not the ALJ's discussion (Filing No. 11 at 6).

Likewise, the ALJ's decision does not explain why a limitation to superficial interactions is or is not warranted based on the record evidence. The Commissioner's explanation that such a limitation would be inconsistent with Dr. Hill and Dr. Maryman's opinions is, again, not based in the ALJ's discussion and is an impermissible *post hoc* rationalization regarding the ALJ's omission

9

of a limitation to superficial interactions with supervisors and co-workers. *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943).

An ALJ must sufficiently articulate his findings in a way that permits the reviewing court to trace the path of his reasoning, assess the validity of the findings, and afford the claimant meaningful judicial review. *E.g.*, *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Here, it is unclear how the ALJ interpreted Dr. Hill's opinion regarding superficial interactions, or why the ALJ did not include a limitation on superficial interactions in the RFC.

And, although the ALJ placed some limitations on Paul's interactions with others—only "occasional" contact with supervisors and co-workers and no contact with the public—it is unclear whether and how these limitations are related to Dr. Hill's opinion regarding superficial interactions. As several courts in the Seventh Circuit have recognized, "occasional" describes the quantity or rate of interactions, while "superficial" describes the quality or nature of interactions. *E.g.*, *Lindsay M. v. O'Malley*, No. 22-cv-1981, 2024 WL 759962, at *6–7 (S.D. Ind. Jan. 31, 2024); *Beverly M. v. Kijakazi*, No. 20-cv-510, 2021 WL 4582179, at *5 (S.D. Ind. Oct. 6, 2021); *Wartak v. Colvin*, No. 14-CV-401, 2016 WL 880945, at *7 (N.D. Ind. Mar. 8, 2016). *But see Reynolds v. Kijakazi*, 25 F.4th 470, 470 n.3 (7th Cir. 2022) (noting that this distinction is "merely persuasive authority in this court"). The ALJ's limitation on the quantity of Paul's interactions with supervisors and co-workers therefore does not allow the Court to evaluate the ALJ's decision not to restrict the nature of those interactions, requiring remand.

The Court need not, and therefore does not, address the parties' arguments as to whether the ALJ's error was harmless because the Court's finding that it cannot trace the ALJ's reasoning with certainty is sufficient to require remand. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir.

2011). On remand, the ALJ must either incorporate into the RFC a limitation to superficial interactions with supervisors and co-workers or explain why such limitation is unnecessary.

## V. CONCLUSION

For the reasons stated above, the final decision of the Commissioner is **REMANDED** for further proceedings consistent with this Entry as authorized by the fourth sentence of 42 U.S.C. § 405(g).

**SO ORDERED**.

Date: 9/22/2025

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Clifford Michael Farrell
Manring & Farrell
clifff@ix.netcom.com

Jay Hinsley
SSA-Ogc
jay.hinsley@ssa.gov

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov